CARLOS DEL RÍO OLMO ET AL., ETC., Plaintiffs and Appellees, v. MANUEL GARCÍA RIVERA ET AL., Defendants and Appellants.

No. 9892. Argued February 6, 1950.—Decided March 27, 1950.

*Wilson P. Colberg* for appellant, The Hartford Accident and Indemnity Co. *Víctor Gutiérrez Franqui* and *Lino J. Saldaña* for Transportation Authority. *Ruiz Suria & Ruiz Suria* for appellee. *Carlos N. Souffront* for Manager of the State Insurance Fund, as *amicus curiae.*

ON RECONSIDERATION

MR. JUSTICE MARRERO delivered the opinion of the Court.

Carlos del Río Olmo, an employee of the Government of Puerto Rico, filed on July 24, 1946, in the District Court of San Juan, a complaint for damages against Manuel García Rivera, The People of Puerto Rico, The Transportation Authority of Puerto Rico, and the Hartford Accident and Indemnity Co. He alleged in substance that through the fault and negligence of the defendant García Rivera, who was driving a bus belonging to the co-defendant Transportation Authority, he suffered an accident on March 21, 1946. The complaint was answered and after abundant evidence was introduced during the trial the defendants asked leave, which

was granted by the court, to amend their answer in order to challenge the latter's jurisdiction and to allege that the action was barred. They grounded both questions on § 31 of the Workmen's Accident Compensation Act, No. 45 of April 18, 1935 (Sess. Laws, pp. 250, 316). They maintained that since the plaintiff had previously resorted to the State Insurance Fund and since he had been compensated on May 8, 1947, the court lacked jurisdiction to entertain the action on the date the complaint was filed and, furthermore, that as the action could only be filed by the injured workman after the expiration of the 30-day period following the date of the award made, the action had prescribed by that time. The two questions thus raised were overruled and the trial went on, whereupon the lower court rendered judgment on the merits granting the complaint and ordering the defendants to pay to the plaintiff $8,000 for the injuries received and for his permanent disability, and $3,500 for his physical sufferings and mental anguish. It ordered them likewise to pay the costs plus $800 as attorney's fees. From this judgment the defendants appealed and on July 29, 1949 this Court reversed the judgment rendered by the lower court on the ground that pursuant to the provisions of § 31 of Act No. 45, *supra*, the action had prescribed. 70 P.R.R. 378.

The plaintiff sought reconsideration and we granted the defendants a term of 15 days to inform in writing on this matter. We also authorized the Manager of the State Fund, at his request, to appear as *amicus curiae*, and we set a day to hear the parties on the reconsideration sought. The thorough examination we have made once more of the question raised in defendants' motion to dismiss, leads us to the conclusion that we were mistaken in rendering our aforesaid judgment of July 29 and that we should now grant the reconsideration requested by the plaintiff and, consequently, pass on the merits of the case.

 Section 31 of Act No. 45, *supra*, textually copied reads:

*"In cases where the injury,* the disease, or the death entitling the workman or employee or their beneficiaries to compensation in accordance with this Act *has been caused under circumstances making third persons responsible for such injury,* disease, or death, *the injured workman or employee or his beneficiaries may claim and obtain damages from the third person responsible for said injury,* disease, or death, and *the Manager of the State Fund may subrogate himself in the rights of the workman or employee or his beneficiaries to institute the same action within the time and in the manner following:*

"When an injured workman or employee, or his beneficiaries in case of death, may be entitled to institute an action for damages against a third person in cases where the State Fund, in accordance with the terms of this Act, is obliged to compensate in any manner or to furnish treatment for said injured workman, *the Manager of the State Fund shall subrogate himself in the rights of the workman or employee or of his beneficiaries, against the third person, and may institute proceedings against the third person in the name of the injured workman or employee or of his beneficiaries at any time after the accident;* and in any decision or award obtained in excess of the sum granted by the Manager, it shall be given to the injured workman or employee or to his beneficiaries.

*"If the Manager fails to file a claim against the third person within the thirty (30) days following the award made, the injured workman or employee or his beneficiaries may institute such action, but this shall not indicate a renunciation of his rights in accordance with this Act;* but if he obtains damages against the third person after he has received compensation from the State Fund, the sum he has received from the State Fund shall be returned to the Manager and the balance of the sum granted by the court shall be delivered to the injured workman or employee or to his beneficiaries.

"Any sum obtained by the Manager of the State Fund through the means provided in this section shall be covered into the State Fund for the benefit of the particular group into which was classified the occupation or the industry in which the injured or dead workman or employee was employed." (Italics ours.)

This Section does not prescribe at all that when the injury, disease, or death of the workman or employee has been

caused under circumstances making a third person responsible, the workman or his beneficiaries must necessarily wait until the expiration of the period of 30 days following the award made by the Manager of the Fund in order to resort to a court with a complaint for damages against the third person causing the injury, disease, or death.[1] Neither this Section, nor any other of the Workmen's Accident Compensation Act, contains any specific provision either to the effect that in cases of this nature the injured workman or employee or his beneficiaries in case of death, should first resort to the Manager of the Fund, nor that because of the mere fact that they resorted to him the hands of the workman or his beneficiaries are completely tied until the expiration of the term of 30 days following the award made. We think that § 31 entitles them to choose the remedy they consider advisable. They may resort to the State Insurance Fund with their corresponding claim. They may also bring a proper action for damages in a competent court against the third person who caused the damages. There is nothing, we repeat, in the act to prevent the workman or his beneficiaries from resorting simultaneously to both entities. But § 31 does expressly provide that where in cases like the one under our consideration, the workman or his beneficiaries are entitled to bring an action against a third person and the State Fund is obliged to compensate in any manner or to furnish treatment for the injured person, the Manager shall subrogate himself in the rights of the workman or his beneficiaries in case of death; that the former may institute proceedings, in the name of the workman, against the third person at any time after the accident; and that if the Manager fails to file a claim within

---

[1] This case does not involve the construction of § 31, as amended by Act No. 16 of April 12, 1948 (Sess. Laws, p. 28) whose fourth paragraph specifically provides:

"The injured workman or employee or his beneficiaries may not institute any action, nor may compromise any right of action they may have against the third person responsible for the damages, until after the expiration of ninety days from the decision of the case by the Manager of the State Insurance Fund."

the 30 days following the award made, the workman or his beneficiaries are entitled to institute such action *but that this shall not indicate a renunciation of his rights,* in accordance with the Act. We take this to mean that if the injured workman wishes to avail himself of the benefits granted by the Workmen's Accident Compensation Act as well as of his right to go to court with an action for damages against a third person, he should wait until the expiration of the period of 30 days following the award before bringing his judicial action, if he does not intend to waive the rights granted to him by the Workmen's Accident Compensation Act. The Manager of the Fund may, of course, subrogate himself in the rights of the workman, and as soon as he learns of the accident he may resort to the courts in the name of the workman or of his beneficiaries with the corresponding action for damages against the third person who caused the injury or death. In this case there is no waiver either on the part of the workman of the benefits of the Workmen's Accident Compensation Act. However, if the workman or his beneficiaries bring a judicial action prior to the expiration of the 30 days following the award made by the Manager of the Fund, then *a contrario sensu,* he or they waive the benefits granted by the Workmen's Compensation Act. That is the punishment imposed by law for going to court prior to the expiration of the aforesaid term of 30 days.

*Machado* v. *The American R. R. Co. of P. R.,* 49 P.R.R. 823, was also a case in which the injuries received by the workman were caused through the fault and negligence of a third person. We decided in that case that the workman was entitled to claim compensation from the third person, even though he had been compensated under the Workmen's Compensation Act. Of course, the statute construed therein was not couched in identical terms as § 31 of the often-repeated Act. In that case § 45 of Act No. 85 of 1928 (Sess. Laws, p. 630) was construed, which Section literally copied reads as follows:

"Section 45.—In cases where the injury for which workmen are entitled to compensation under this Act shall have been sustained under circumstances creating a liability against a third person or against the employer for injuries caused by his illegal act or gross negligence (willful misconduct) or by defects in the machinery or implements, if the workman or his heirs receive compensation under this Act from the State Fund, the Industrial Commission shall be subrogated to the rights of the injured workman or his heirs and may prosecute an action and recover damages from such third person or such employer liable for such injury, which damages when recovered shall be covered into the Workmen's Relief Trust Fund for the benefit of the particular group in which the injured workman's occupation was classified."

But, despite the context of that Section, we reached the aforesaid conclusion and stated at p. 827 that "The right of the Industrial Commission to subrogation is no obstacle to a recovery by the laborer of proper damages in a suit brought by him against the third person liable. *The fact that a person is entitled to be subrogated to the rights of another does not preclude the latter from the exercise of an action to enforce his own right. The subrogation does not imply an exclusive right to bring the action.* . . . If the latter brings suit after he received compensation, the Industrial Commission will be entitled to recover an amount equal to the one it paid the laborer." (Italics ours.) See also *Sanabria* v. *White Star Bus Line*, 50 P.R.R. 722, in which we arrived at the same conclusion reached in the *Machado* case.

 We fail to see in fact anything in § 31 to prevent the workman from resorting to the State Insurance Fund and from bringing a judicial action prior to the expiration of the term of 30 days following the award made by the Manager of the Fund. As the accident herein occurred on March 21, 1946, the action for damages brought by the plaintiff was not barred on July 24 of the same year. Pursuant to § 1868 of the Civil Code, 1930 ed., he had a year to do so. Furthermore, since a sum in excess of $500 was claimed in the action

94

for damages, the District Court of San Juan clearly had jurisdiction to entertain it.[2] *Rivera* v. *Goytía*, 70 P.R.R. 29.

In view of the preceding considerations the motion for reconsideration filed by the plaintiff should be granted, and the judgment rendered set aside, it being necessary hence to pass on the merits of the case. The first two errors assigned by the defendant to the effect that the lower court erred in declaring itself with jurisdiction and in not deciding that the action had prescribed, have not been therefore committed.

▮▮▮▮▮ The third assignment charges that the lower court erred in admitting the testimony of Drs. Diego Biascoechea and José D. Jiménez, regarding statements made to them by the plaintiff himself with respect to his injuries. The former of these physicians treated the plaintiff from the night he was taken unconscious to his clinic until the day he was discharged; the latter, an expert psychiatrist, examined him shortly after the workman was discharged from the former's clinic. The testimonies of these doctors with respect to the injuries suffered by the plaintiff and to the latter's condition, as well as with respect to the statements made to them by the plaintiff as to the injuries he received and as to how he felt, were clearly admissible. *United States* v. *Cannon*, 116 F. (2) 567; 136 A.L.R. 980; 130 A.L.R. 977. Furthermore, Dr. Jiménez was extensively cross-examined by the defendants, thus waiving any objections which might exist as to the inadmissibility of his testimony. *López* v. *Bravo*, 68 P.R.R. 470, 472.

▮▮▮▮▮ The fourth and fifth errors are to the effect that the lower court erred in weighing the evidence and in granting the amount which appears in the judgment.

Plaintiff's evidence tended to show that on March 21, 1946, about 9 p.m., he alighted in front of his house in Borinquen Avenue of Santurce, from a bus traveling from west to east, that is, from Martín Peña to the place known as La

---

[2] The fact that the injured workman received compensation from the State Fund on May 8, 1947 plays no role with respect to the questions raised.

Cantera; that at that moment one of the so-called independent busses which was traveling towards San Juan on the same Avenue, halted at the stop which is located shortly after crossing a transversal street known as Cortijo; that the bus of the defendant Transportation Authority, driven by Manuel García Rivera, which was also traveling on that Avenue towards San Juan, was going rather fast and when it tried to pass next to the independent bus when the latter resumed its course, it hit plaintiff Del Río Olmo, who at that moment was coming out from behind the bus he had just left; and that the speed of the vehicle driven by García Rivera was such that when it braked to a stop it made quite some noise, left the tire prints on the road, swerved to the left and hit the plaintiff unconscious, with his head approximately 18 or 20 inches from the left sidewalk.

Defendants' evidence was to the effect that the plaintiff suddenly started to cross the road from south to north from behind the second of two parked busses on the south side of Borinquen Avenue; that at that moment the bus driven by García Rivera traveled on said Avenue at a moderate speed and towards San Juan; that if the plaintiff had gone onward, the accident would not have happened, but that the latter, when almost in the middle of the road, upon seeing the bus of the defendant, took several steps backwards, and when García Rivera applied the brakes he could not avoid the accident which was therefore due to plaintiff's negligence.

The evidence, as we have seen, was conflicting but the lower court was the one called upon to resolve the conflict and it did so. We think there is sufficient evidence in the record to justify its findings. See *Pérez* v. *Cruz*, 70 P.R.R. 890 and *Varela* v. *Fuentes*, 70 P.R.R. 838. Even accepting that the fact that the plaintiff suddenly started to cross the road from south to north from behind a parked bus constitutes negligence, however, the main fact to be determined in cases like the one at bar is not whether the plaintiff was guilty of negligence or not, but rather what was the proximate cause

of the accident. *Pérez* v. *Santiago*, 56 P.R.R. 732, 734; *López* v. *Rexach*, 58 P.R.R. 145, 157.

 The evidence introduced by the plaintiff also tended to show that at the time of the accident he was a man shortly over 50 years old, having worked during 30 of these years for the Government of Puerto Rico, being at the date of the accident second accounting officer of the Bureau of General Accounting of the Department of Finance of Puerto Rico, and whose salary then was $200 monthly. The evidence also showed, in a general way, that after the accident plaintiff spent about 80 days in the Biascoechea Clinic and that he was taken there in an unconscious state; that as a result of the accident he received several wounds in the head, severe contusions on the chest, a multiple knee fracture in the tibia and fibula bones and that, although the skull X-ray presented no evidence of a fracture, the plaintiff displayed symptoms indicating that there had been a fracture at the base of the skull; that due to the accident plaintiff walks with difficulty and is unable to climb stairs; that he has lost his memory; that he is unable to work in the kind of work in which he had been engaged until then, and that he has been compelled to resign his position in the Government; that he has noticeably lost the capacity to acquire knowledge of new matters; that he presents permanent changes in his personality as a consequence of a cranial trauma; that his intellectual capacity is noticeably poor and he will not be able to work as an accountant. Under these circumstances we do not think that the total compensation granted is excessive.

Judgment will be entered granting the reconsideration sought, consequently setting aside the judgment rendered by this Court on July 29, 1949, and affirming the judgment rendered by the lower court on June 10, 1948.

Mr. Chief Justice De Jesús dissented on the grounds set forth in the opinion on which the judgment reconsidered herein was based. 70 P.R.R. 378.

Mr. Justice Snyder agrees with the result.